**Mireya ZORILLA, Plaintiff,**

**v.**

**Shirley S. CHATER, Commissioner of Social Security,\* Defendant.**

**No. 94 Civ. 6218 (JGK).**

United States District Court, S.D. New York.

Feb. 23, 1996.

---

\* Pursuant to Public Law No. 103–296, §§ 105(a)(1), 106(d), 106(f) the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security effective March 31, 1995, and the Court may enter an order for substitution of parties. Accordingly, Shirley S. Chater, Commissioner of Social Security, has been substituted as defendant in this action for the Secretary of Health and Human Services and the title Commissioner has been used for any references to the Secretary throughout this opinion.

Jill Ann Boskey, Wayne G. Hawley, MFY Legal Services, Inc., New York City, for Plaintiff.

Mary Jo White, United States Attorney, Susan D. Baird, Assistant United States Attorney, Office of the United States Attorney for the Southern District of New York, New York City, for Defendant.

### OPINION AND ORDER

KOELTL, District Judge:

These are cross-motions for judgment on the pleadings on an appeal from a decision by the Administrative Law Judge ("ALJ") taken pursuant to § 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), which authorizes judicial review of determinations of the Commissioner of Social Security in accordance with 42 U.S.C. § 405(g). At issue is whether substantial evidence supports the finding by the Commissioner of Social Security ("Commissioner") that the plaintiff, Mireya Zorilla, is not entitled to Supplemental Security Income ("SSI") disability benefits under the Social Security Act (the "Act") for the period April 21, 1993 through September 6, 1994 because she was not disabled within the meaning of that program. At a hearing on February 10, 1994, the ALJ found that Zorilla was not disabled and, therefore, that she was not eligible for SSI benefits under Sections 1602 and 1614(a)(3)(A) of the Act, 42 U.S.C. §§ 1381a, 1382c(a)(3)(A). (R. at 10–14.) The Appeals Council denied Zorilla's request for review on May 20, 1994, (R. at 2–3), making the ALJ's decision the final decision of the Commissioner.[1] It is from this decision Zorilla now appeals.

1. Accordingly, references to the determinations and findings that are at issue in this appeal are

## I.

At the time she filed her application for SSI disability benefits, Zorilla was thirty-seven years old. (R. at 24, 30.) She emigrated from the Dominican Republic in 1970 when she was fifteen, (R. at 24), and, in spite of her long residence in the United States, she speaks, reads, and writes only in Spanish. (R. at 24, 83, 84, 89.) Zorilla has never held a job, (R. at 25, 81), and, while in the Dominican Republic attended school through the third grade. (R. at 24, 81.) She spends most of her time at home where she lives with a friend, enjoying television or the radio, or cleaning around the apartment. (R. at 28, 80.) She shops about every day, (R. at 28, 80), and visits her mother twice a week. (R. at 80.) Ms. Zorilla is able to use public transportation. (R. at 28, 80.)

On May 2, 1993, Zorilla applied for SSI disability benefits. In the application, she alleged that she had been disabled since 1973 because of "low calcium," (R. at 31, 77), and further alleged that she suffered from an "iron deficiency ... and has thyroid and nerve condition." (R. at 77.) Zorilla alleged she had received medical treatment at Beth Israel Hospital from 1973 to 1990, and at Bellevue Hospital Center from 1991 until the time of the application. (R. at 78–79.)

The documentary evidence in support of the application consisted of a Clinic Evaluation Form from Bellevue Hospital Center. (R. at 92.) The form, dated May 6, 1993, indicates that Zorilla suffered from hypoparathyroid since 1975. (*Id.*) The form also indicates that Zorilla underwent a thyroidectomy in 1975. (R. at 92.)

Following her application for benefits, Zorilla was examined by E.B. Balinberg, M.D. (Internal Medicine) on July 13, 1993. (R. at 93.) Dr. Balinberg's report confirms that Zorilla is "status post thyroidectomy," (R. at 94), and indicates that lab results confirm Zorilla has "normochromic normocytic anemia" with presence of degenerated neutrophils. (R. at 96.) Dr. Balinberg's diagnosis was "status post thyroidectomy and hypoparathyroidism possibly secondary to thyroidec-

tomy." (R. at 95.) With respect to Zorilla's physical abilities, Dr. Balinberg concluded:

[S]he has some restriction in her ability to perform heavy physical activities. She had today an appointment with a psychiatrist. Please see the opinion of the psychiatrist about her ability to function in a work setting.

(R. at 95.)

Another report, dated January 6, 1993, was compiled by D.J. Schelker, M.D., Zorilla's treating physician from Bellevue. Dr. Schelker reconfirmed Zorilla's hypoparathyroid condition and discussed her medication. (R. at 103.) Dr. Schelker did not report any conclusions or opinions regarding the patient's ability to function at work.

Zorilla attended a psychiatric examination on July 13, 1993 conducted by Joshua Algaze, M.D. (Psychiatry). (R. at 97.) Dr. Algaze reported:

[Zorilla] has had a history of feeling occasionally sad, thinking about her health, feeling despondent and isolated. She denies auditory or visual hallucinations. Denies suicidal or homicidal ideations. Denies any currently [sic] psychiatric treatment or history of psychiatric hospitalizations. She at times expresses concern over her ability to function. She states she had become very isolated and withdrawn. She occasionally may have some crying spells. She feels from early on throughout her life she has had physical problems and occasionally she feels she is being "punished."

(R. at 97.) Dr. Algaze also observed Zorilla to have been pleasant and cooperative, appropriately dressed and groomed, and that she maintained good eye contact. (R. at 97.) He reported, however, that her attention and concentration were "mildly impaired." (R. at 97.) Dr. Algaze made a diagnosis of "adjustment reaction with depression" and explained:

It is my opinion allegations are consistent with my findings. [Zorilla] suffers from *severe difficulties in her personal, social and occupational adjustment that impair her ability to tolerate work pressures.*

interchangeably referred to as those of the ALJ and those of the Commissioner.

(R. at 98 (emphasis added).) Dr. Algaze's prognosis for Zorilla was "Fair," and he "[s]trongly encouraged [her] to seek psychiatric help." (R. at 98.)

Zorilla's application and the reports of Drs. Schelker, Balinberg and Algaze were reviewed by A. Dinoff, M.D. On the basis of the application and the reports, but without a physical examination of Zorilla, Dr. Dinoff concluded that no physical restrictions had been established, (R. at 44–51), and that the claimant suffered no significant mental limitations except her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "to interact appropriately with the general public." (R. at 67–68.) Dr. Dinoff concluded that the plaintiff could perform "low stress work." (R. at 69.)

Following the initial denial of her application, Zorilla requested reconsideration. (R. at 56.) That request was denied on the basis of the same reports and application materials. (R. at 71–74.) No attempt was made to obtain additional information. The plaintiff then requested a hearing before the ALJ. (R. at 75.)

## II.

On January 13, 1994, Zorilla, testifying through an interpreter, appeared *pro se* before Administrative Law Judge Newton Greenberg. (R. at 10, 23). The only documentary evidence before the ALJ was the single page Clinical Evaluation Form signed by Zorilla's treating physician, Dr. Schelker, the two consultative reports from Drs. Balinberg and Algaze, and the conclusions of Dr. Dinoff drawn from those reports and Zorilla's application. The ALJ questioned Zorilla briefly about her history of thyroid problems and about the treatment she was receiving. Zorilla testified that she was under a doctor's care and was taking medication for her thyroid condition. (R. at 26.) She testified that the medication made her feel better but that her condition had not improved since she began taking medication in 1973. (R. at 27.)

The ALJ also questioned Zorilla briefly about her depression. The following exchange took place:

Q: Then it is also an issue in reviewing this file that you claim that one of the reasons you cannot work is depression?

A: Yes.

Q: Now, did you complain to your doctor about that?

A: No.

Q: Did you complain to any doctor about that aside from the doctor who examined you for Social Security?

A: No.

Q: So you are not receiving any psychiatric treatment?

A: No.

Q: And you never have received?

A: No.

Q: And you are not taking any medication or any kind of tranquilizer or any type of relief in that area?

A: No.

(R. at 27.) The ALJ did not question Zorilla about her crying spells, inability to concentrate for extended periods of time, feelings of isolation or withdrawal, a belief that she is being punished, or any of the other considerations reported by Dr. Algaze in his report about Zorilla's mental health.

The ALJ denied Zorilla's application for benefits. (R. at 10–14.) The ALJ found that Zorilla had a "severe impairment" but that she retained the capacity to perform light work, and that, in spite of her impairment, there are "a significant number of jobs in the economy that [Zorilla] is capable of performing of a light nature." (R. at 12.) Based on his finding that Zorilla retained a residual functional capacity to perform light work, in combination with her age, education, and employment history, the ALJ determined that Zorilla was not disabled. (R. at 12–13.)

## III.

A court may reverse a finding of the Commissioner only if that finding is not supported by substantial evidence in the record. 42 U.S.C. § 405(g) (1991) (made applicable to SSI cases by 42 U.S.C. § 1383(c)(3) (1992)). Substantial evidence is "more than a mere

scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Diaz v. Shalala,* 59 F.3d 307, 312 (2d Cir.1995); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir. 1991).

### A.

Under the Act, a person is considered disabled when that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must be of a severity that the person:

> is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A). The Commissioner has established a five step sequential evaluation process for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; ... Assuming the claimant does not have a listed

impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.... [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982); *see also Diaz,* 59 F.3d at 312 n. 2; 20 C.F.R. §§ 404.1520, 416.920.

■ The initial burden is on the claimant to prove that she is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(5); *see also Reyes v. Secretary of Health and Human Servs.,* 807 F.Supp. 293, 298 (S.D.N.Y.1992) (Motley, J.). This burden encompasses the first four steps described above. *Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983). Once the claimant carries the burden of proving disability by showing that her impairment prevents her employment, she has established a prima facie case and the burden shifts to the Commissioner to prove the fifth step—that there exists alternative substantial gainful employment in the national economy that the claimant can perform considering not only her physical capacity but also her age, education, experience, and training. *Id.* 717 F.2d at 722–23; *see also Reyes,* 807 F.Supp. at 298; *Crean v. Sullivan,* No. 91 Civ. 7038, 1992 WL 183421, at *4 (S.D.N.Y. July 22, 1992) (Leisure, J.).

■ The Commissioner has the burden of proving the fifth step:

> [The Commissioner] must consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. In particular, the [Commissioner] is required to give considerable—and if uncontradicted, conclusive—weight to the expert opinions of the claimant's own treating physicians.

*Ferraris v. Heckler,* 728 F.2d 582, 585 (2d Cir.1984) (citations omitted); *see also Sims v. Sullivan,* No. 91 Civ. 1668, 1992 WL 138409, at *4 (E.D.N.Y. May 28, 1992). The lay

evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required. *Rivera–Torres v. Secretary of Health & Human Servs.*, 837 F.2d 4, 6–7 (1st Cir.1988). As explicitly stated in the regulations, residual functional capacity ("RFC") is a medical assessment, and therefore, the ALJ is precluded from making his assessment without some expert medical testimony or other medical evidence to support his decision. *See* 20 C.F.R. § 404.1513(c), (d)(3).

■ In meeting her burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid".[2] The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability. *Crean*, 1992 WL 183421, at *4.

Exclusive reliance on the Grid, however, is inappropriate where the medical-vocational guidelines fail to accurately describe a claimant's particular limitations. *See* 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(e); *Crean*, 1992 WL 183421, at *4. Where there are discrepancies between the claimant's profile and the Grid factors, all relevant facts are to be considered in light of the vocational considerations outlined in 20 C.F.R. §§ 404.1560–404.1569a; *see Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986). For example, sole reliance on the Grid may be pre-

cluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform. *See* 20 C.F.R. Part 404, Subpart P, App. 2, §§ 200.00(e)(2), 201.00(h); *see also Bapp*, 802 F.2d at 605; *Crean*, 1992 WL 183421, at *4–*5.[3] This is also the case where there is not substantial evidence that a claimant can perform a full exertional range of work. *See Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir.1989) (individual assessment required where there is insufficient proof that a claimant can perform a full range sedentary work).

**B.**

■ In the present case, the ALJ undertook the five step inquiry. First, the ALJ found that Zorilla had not engaged in substantial gainful activity since April 21, 1993. (R. at 13.) Second, the ALJ found that Zorilla was severely impaired, citing both her status post thyroidectomy with associated "hypothyroidism and hyproparathyroidism" and "adjustment reaction with depression and personality disorder." (*Id.*) Third, the ALJ found that Zorilla's impairments were not listed in the regulations. (*Id.*); *see* 20 C.F.R. Part 404, Subpart P, App. 1., ¶¶ 12.00–.09. With respect to whether Zorilla retained a residual functional capacity to perform her past work, the ALJ made no findings because Zorilla had never been employed. *See Vega v. Sullivan*, No. 88 Civ. 4182, 1989 WL 99774, at *3 (S.D.N.Y. Aug. 24, 1989) ("The [fourth] step—whether a claimant can perform past relevant work— was inapplicable, since Vega had no prior work experience."); *Marzec v. Secretary of Health and Human Servs.*, No. CIV.–93– 1097E, 1987 WL 9644, at *4 (W.D.N.Y. Apr.

---

**2.** The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling.

**3.** An "exertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e. sitting, standing, walking, lifting, carrying,

pushing, and pulling). 20 C.F.R. § 404.1569a(b). A "nonexertional limitation" is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. § 404.1569a(c). Examples of nonexertional limitations are nervousness, difficulties with sight or vision, and an inability to tolerate dust or fumes. 20 C.F.R. § 404.1569a(c)(i), (iv), (v).

16, 1987) ("[B]ecause the plaintiff essentially had no prior work experience, she (4) could not perform her past work."). Accordingly, because the first four steps were satisfied, the ALJ found that Zorilla carried her burden of making a prima facie showing of disability. (R. at 12–13.)

With respect to the fifth and final step, for which the Commissioner bears the burden of proof, the ALJ concluded that Zorilla had the residual functional capacity to perform "a wide range of at least light work ... of a simple, routine and repetitive nature, not requiring complex or technical jobs instructions in a high stress environment." (R. at 12.) The ALJ further concluded that, in spite of her restrictions, "there are a significant number of jobs in the economy that the claimant is capable of performing of a light nature." (*Id.*) The ALJ referred to the Grid to determine that Zorilla was not disabled. The ALJ found that Zorilla was a "younger individual" pursuant to 20 C.F.R. § 416.963, that she was unable to communicate in English, that she had a marginal education pursuant to 20 C.F.R. § 416.964, and that she had no transferable skills pursuant to 20 C.F.R. § 416.968. The ALJ also found Zorilla was unable to understand complex technical job instructions, constituting an additional nonexertional limitation on her residual functional capacity. Ultimately, applying these factors to the Grid, *see* 20 C.F.R. Part 404, Subpart P, App. 2, §§ 202.16, the ALJ concluded that Zorilla was not disabled.

The ALJ's finding that Zorilla retained a functional capacity for light work is unsupported by any medical evidence in the record. In making his findings, the ALJ acknowledged the psychiatric conclusions reported by Dr. Algaze that Zorilla suffers from "severe" difficulties. (*Id.*) But the ALJ discounted those findings as "not entitled to greater weight as a 'treating physician relationship' ... and apparently many written statements made by this consulting physician were responses made by the claimant to direct questioning." (*Id.*) Rather than refer to another source for a psychiatric determination, however, the ALJ appeared to make his own:

[T]he claimant advised that she performs all household chores, visits her mother twice weekly and uses public transportation. She is not homebound.

. . . .

... In this case, the level of mental anguish and discomfort alleged as constant and totally disabling is not supported by objective clinical findings, not consistent with her performance of many normal activities of daily living and not found credible.

(*Id.*) In addition, the ALJ relied on the fact that Zorilla denied having received psychotherapy or pharmacotherapy. (*Id.*) The ALJ did not refer to any evidence in the record to which he had given more weight, indeed any weight, with respect to his determination that Zorilla retained a functional capacity for light work.

The ALJ's determination is wholly unsubstantiated by any expert medical opinion. Indeed, the ALJ's determination is contradicted by the opinion of Dr. Algaze, the only physician to have performed a psychiatric examination on Zorilla. Dr. Balinberg did conclude that Zorilla was restricted in her "ability to perform heavy physical activities." (R. at 95.) That opinion, however, is limited to physiological capabilities, and Dr. Balinberg explicitly deferred to the opinion of a psychiatrist with respect to Zorilla's "ability to function in a work setting." (*Id.*) Dr. Algaze's psychiatric opinion, based on a personal examination, sets forth the basis for his opinion, a diagnosis and prognosis, and an indication of Zorilla's work capabilities, all in accordance with applicable regulations. *See* 20 C.F.R. § 416.919n(c). That opinion was quite straightforward: "[Zorilla] suffers from severe difficulties in her personal, social and occupational adjustment that impair her ability to tolerate work pressures." (R. at 98.)

It is true, of course, that the Commissioner's regulations direct that greater weight be given to the opinion of a treating physician, *see* 20 C.F.R. § 416.927(d)(2), and Dr. Algaze was not Zorilla's treating physician. But no psychiatric opinions were expressed in the report of Zorilla's treating physician, and the regulations do provide that more weight is generally given to an examining source, to a

well supported and explained medical opinion, to an opinion consistent with the record as a whole, and to the opinion of a specialist regarding issues related to that specialty. *See* 20 C.F.R. § 416.927(d)(1)–(5).

Dr. Algaze was the only psychiatric specialist to have personally examined Zorilla and made his findings in the report put in evidence before the ALJ. No other psychiatric opinion is reported by an examining physician that conflicts with Dr. Algaze's opinions. The opinions of the non-examining physician, Dr. Dinoff, whose specialty is not indicated in the record, also note that Zorilla was "moderately limited" in social functioning, the ability to perform activities within a schedule, to maintain regular attendance, and be punctual. (R. at 65–67.)

Finally, the medical psychiatric evidence in the record corresponds to Zorilla's own complaints of "nervousness" and "occasional depression, isolation and withdrawal" each of which was recognized by the ALJ. (R. at 12.) Given the presence of Dr. Algaze's uncontested psychiatric expert opinion in the record, the ALJ's rejection of that evidence in favor of his own conclusions constitutes legal error. *See McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."); *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983).

 Furthermore, the evidence from which the ALJ drew his own medical conclusions was not proper for that purpose. The fact that Zorilla denied having received psychotherapy or psychiatric drug treatment is not dispositive of her mental capabilities. *See De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 934 (2d Cir. 1984) ("A claimant's denial of psychiatric disability or the refusal to obtain treatment for it is not necessarily probative." (citation omitted)). Likewise, the fact that Zorilla could perform household chores, use public transportation, and visit her mother are not proof that she could shoulder the responsibilities of employment. *See Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983) (capacity to work not proved by claimant's ability to read, watch television, listen to radio, ride buses and subways).

 Finally, to the extent the ALJ drew his conclusion from the fact that Zorilla did not introduce any evidence of her own to establish the severity of her mental condition, that conclusion is defective. In *Martin v. Shalala*, No. 91–CV–0730E, 1994 WL 263818 (W.D.N.Y. June 13, 1994), where the court determined that the Secretary's decision that the plaintiff could perform a full range of unskilled sedentary work was not supported by substantial evidence, the court noted:

> [T]he ALJ stated 'nowhere in the medical evidence is there any indication that the claimant would be unable to meet the exertional demands of sedentary work.' One does not, of course, sustain a burden of proof by pointing to an absence of proof supporting an adversary's position. But more importantly, this statement highlights the ALJ's failure to introduce specific medical evidence that the plaintiff could hold a sedentary job.

*Id.*, 1994 WL 263818, at *4 (citation omitted). The ALJ in this case made an identical error.

In short, the record simply does not contain substantial evidence to support the ALJ's determination that the claimant had a residual functional capacity sufficient to perform light work. This constitutes a failure by the Commissioner to sustain her burden of proof with respect to the fifth step in the analysis described above. Consequently, the ALJ's use of the Grid to establish that Zorilla was not disabled is similarly unsupported by substantial evidence and inappropriate. The question then becomes whether this case should be remanded for further proceedings or only for the calculation of benefits.

### C.

 A reversal and remand solely for the calculation of benefits is the appropriate disposition in this case. In *Shalala v. Schaefer*, — U.S. ——, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), the Supreme Court explained that the "exclusive methods" by which district courts may remand a case to the Commis-

sioner are set forth in sentences four and six of 42 U.S.C. § 405(g). Sentence four provides:

The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). And, sentence six provides, in relevant part:

The court may, on motion of the [Commissioner] made for good cause shown before [she] files [her] answer, remand the case to the [Commissioner] for further action by the [Commissioner], and it may at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

*Id.; see also Melkonyan v. Sullivan*, 501 U.S. 89, 97–99, 111 S.Ct. 2157, 2162–64, 115 L.Ed.2d 78 (1991) (discussing the two types of remand); *Sullivan v. Finkelstein*, 496 U.S. 617, 624–27, 110 S.Ct. 2658, 2663–65, 110 L.Ed.2d 563 (1990) (same); *Caceres v. Shalala*, No. 93 Civ. 7444, 1995 WL 20312, at *2 (S.D.N.Y. Jan. 19, 1995) (McKenna, J.) ("The Court has jurisdiction to affirm, modify, or reverse any final decision of the Secretary.... The Court may remand for good

cause shown or to consider additional evidence which is material and not improperly ignored originally.") (citations omitted); *Irvine v. Sullivan*, No. 91 Civ. 500, 1992 WL 245581, at *5 (E.D.N.Y. Aug. 11, 1992) (noting, under the recent Supreme Court cases, the two possible types of remand).

Here, there has been no showing of good cause by the Commissioner, nor has there been a proffer of new and material evidence. Indeed, the Commissioner has not sought a remand for the submission of new and material evidence or attempted to show good cause why that evidence was not proffered before the initial determination.[4] Therefore, it is appropriate to grant the plaintiff's motion and deny the Commissioner's motion, thereby reversing the Commissioner's decision that the plaintiff is not entitled to benefits and remanding the case for the calculation of benefits. *See, e.g., Cotto v. Chater*, 94 Civ. 5198, 1995 WL 577770, at *5 (S.D.N.Y. Sept. 29, 1995) (Cedarbaum, J.) (reversing the Commissioner's decision and remanding for the calculation of benefits where there was not substantial evidence in the record to support the determination that the plaintiff could perform light work); *Koseck v. Secretary of Health and Human Servs.*, 865 F.Supp. 1000, 1013–15 (W.D.N.Y. 1994) (reversing the Secretary's decision and remanding for the calculation of benefits

---

4. In fact, the plaintiff submitted substantial new and material evidence in support of this appeal. (*See* Affirmation of Jill Ann Boskey, dated July 19, 1995.) This new evidence consists primarily of additional medical records compiled by Zorilla's counsel and submitted with her reapplication for SSI disability benefits on September 7, 1994. That later application was granted. (*See* Boskey Aff., Ex. A.)

While the new evidence was not before the ALJ for this case, and was not considered for the purposes of this appeal, the additional medical information assembled by Zorilla's counsel for her reapplication does underscore the deficiency in the hearing below in this case. Of particular interest is an additional psychiatric evaluation revealing that Zorilla (i) did receive psychiatric treatment in 1975, shortly after her thyroidectomy; (ii) has an IQ of 71, (Borderline range); (iii) has serious visual-motor perception impairment; (iv) has an Alekoumbides score of 66, (Retarded range) indicating a "serious impairment of attention to visual details, low abstract thinking, impaired mental flexibility and poor ability to learn from one's own mistakes;" (v) has a Wechsler

Memory Test quotient of 66 (Retarded range); and (vi) was given a guarded prognosis. (*See* Boskey Aff., Ex. C.)

There is no evidence to suggest that these serious and important findings could not have been made earlier had more evidence been gathered when Zorilla first applied for SSI disability benefits. The ALJ, especially when dealing with a *pro se* claimant, has a responsibility to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)); *see Flanders v. Chater*, No. 93 Civ. 5671, 1995 WL 608287, at *7 (S.D.N.Y. Oct. 17, 1995) (Scheindlin, J.) (ALJ is under heightened obligation to assist *pro se* claimant and "at the very least, before denying a pro se claimant's application" the ALJ should advise the claimant to produce additional evidence or suggest the treating physician be called to testify). In this case, however, rather than develop the record further, the ALJ elected to ask a handful of leading questions and lay a foundation for his own medical conclusion. (*See* R. at 27.)

where there was not substantial evidence in the record to support the determination that the plaintiff could perform sedentary unskilled work); *Irvine,* 1992 WL 245581, at *4–*7 (granting the plaintiff's motion for judgment on the pleadings and remanding for calculation of benefits where there was not substantial evidence of the plaintiff's ability to perform any substantial gainful activity); *Morris v. Bowen,* No. 88 Civ. 0591, 1989 WL 270107, at *7 (S.D.N.Y. Jan. 12, 1989) (reversing the Secretary's decision to deny benefits and remanding for the calculation of benefits where the Secretary failed to adduce evidence of the claimant's capability of gainful employment and where the Secretary's determination that the claimant could perform sedentary work was not supported by substantial evidence).

In this case, the reversal of the ALJ's decision is a result of the Commissioner's failure to present sufficient evidence to support that decision. Because the Commissioner has neither requested a remand, indicated that additional material evidence is forthcoming or available, nor shown good cause for not having introduced such evidence in the record, it is appropriate to remand solely for the calculation of benefits.

## IV.

For all of the reasons explained above, the Court finds that the decision of the Commissioner denying the plaintiff disability benefits is not supported by substantial evidence. Thus, the plaintiff's motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is granted and the defendant's cross motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is denied. This case is remanded to the Commissioner for the calculation and payment of benefits.

**SO ORDERED.**