10-4351-cv
Roma v. Astrue

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of January, two thousand twelve.

Present:
> ROBERT A. KATZMANN,
> BARRINGTON D. PARKER,
> *Circuit Judges.*[1]

_____

WILLIAM C. ROMA,

  *Plaintiff-Appellant*,

         v.                                        No.  10-4351-cv

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL
SECURITY,

  *Defendant-Appellee*.

_____

For Plaintiff-Appellant:          ALLAN B. RUBENSTEIN, New Haven, CT.

---

[1] The Honorable Robert D. Sack, who had originally been assigned to this panel, recused himself. The remaining two members of the panel decide the matter pursuant to Second Circuit Internal Operating Procedure E(b).

For Defendant-Appellee:　　　　　　ANN M. NEVINS, Assistant United States Attorney (Sandra S. Glover, Assistant United States Attorney, *on the brief*), *for* David B. Fein, United States Attorney for the District of Connecticut.

Appeal from the United States District Court for the District of Connecticut (Eginton, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant William C. Roma appeals from a judgment of the United States District Court for the District of Connecticut (Eginton, *J.*) entered on September 3, 2010, affirming the determination of an Administrative Law Judge ("ALJ") that Roma was not disabled and therefore ineligible for disability insurance benefits under the Social Security Act. On appeal, Roma contends that the ALJ's determination was not supported by substantial evidence because the ALJ (1) erroneously failed to accord controlling weight to the medical opinions of Roma's treating psychiatrist and pain specialist, (2) did not follow SSR 85-15 when he evaluated stress as a factor in his decision, and (3) misused the medical vocational guidelines when he found that there were jobs Roma could perform in the national economy. We assume the parties' familiarity with the underlying facts and procedural history of this case.

"In reviewing the denial of Social Security benefits by the Commissioner, our focus is not so much on the district court's ruling as it is on the administrative ruling." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks and brackets omitted). "It is not our function to determine *de novo* whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Instead, "we set aside an ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Rosa*, 168 F.3d at 77 (internal quotation marks and

2

brackets omitted).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pratts*, 94 F.3d at 37 (internal quotation marks omitted).  "On appeal, we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.  We may not properly affirm an administrative action on grounds different from those considered by the agency."  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citations omitted).

An individual is "considered to be disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Regulations enacted by the Social Security Administration set forth a five-step analysis for evaluating whether an individual's impairment meets this definition of disability.

> The first step in the process requires the Secretary to ascertain whether the claimant is currently engaged in "substantial gainful activity." . . .  If the applicant is not engaged in such activity, the second step requires a decision whether the claimant's medical condition or impairment is "severe," *i.e.*, one that significantly limits his ability to work. . . .
>
> If the impairment is severe, step three requires a determination of whether the damage is of sufficient gravity to meet or equal the definitions found in the Listing of Impairments (the "Listings").  *See* 20 C.F.R. Part 404, Subpt. P, App. 1 (1987). . . . If, however, a claimant has a severe impairment that is not considered *per se* disabling under the Listings, step four compels the Secretary to ascertain his residual functional capacity ("RFC"), a measure of employment capabilities. . . . If the applicant is unable to perform his past work, he is then evaluated at the fifth step in the process, which requires a finding of whether, given his functional ability (RFC), age, education and past work experience, he could perform other jobs that exist in the national economy.

*State of N.Y. v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

3

We begin with Roma's contention that the ALJ erroneously failed to accord controlling weight to the medical opinions of two treating physicians: Dr. Mitchell Pyrwes, a physiatrist and pain management specialist, and Dr. Mark Ligorski, a psychiatrist. A treating physician's opinion is accorded "controlling weight" when it is "well[]supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(d)(2). Nevertheless, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). It is the Commissioner who is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(e)(1). Moreover, the deference accorded to a treating physician's opinion may be reduced upon consideration of other factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2)(i)-(ii) and (d)(3)-(6); s*ee also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.") (internal citation omitted).

Upon our review of the record, we conclude that the ALJ properly declined to accord controlling weight to the opinion of Dr. Pyrwes. As an initial matter, Dr. Prywes's assertion that

4

Roma "is permanently disabled," App. 257, cannot itself be determinative because it is the responsibility of the Commissioner to make the ultimate decision as to whether the claimant meets the statutory definition of "disabled." *See* 20 C.F.R. § 404.1527(e)(1). Moreover, Dr. Pyrwes's assessment was inconsistent in material respects with other substantial evidence. For example, Dr. Sekhar Chirunomula, a state agency physician, found that key RFC and clinical signs were relatively normal or mild. App. 300-301. He was "unable to extract [from Roma] any significant cognitive dysfunction," and his physical examination revealed "well-preserved muscle tone, grip strength, balance, dexterity, and gait." *Id.* at 301. Dr. Chirunomula's findings were consistent with Dr. Katharine Tracy's Residual Functional Capacity Assessment, which concluded that Roma could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and perform unlimited pushing and pulling, *id.* at 245, as well as Dr. Patricia Mitchell's conclusion that Roma's "[o]verall cognitive functioning was generally in the average range," *id.* at 160. Moreover, Dr. Prywes's opinion conflicted with Roma's own testimony that he could perform a reasonably broad range of light, non-stressful activities at or near his home, including driving, reading, sending email, and independently performing the activities of daily living while his wife worked full-time. *Id.* at 23. Accordingly, the ALJ was not required to defer to Dr. Prywes's opinion that Roma was unable to "undertake any kind of gainful employment." *Id.* at 257.

Roma's related argument, that the ALJ erred by failing to consider the appropriate factors under 20 C.F.R. §404.1527(d) in rejecting the opinion of Dr. Pyrwes, is similarly without merit. The ALJ considered the length of the treatment relationship with Dr. Prywes, noting that the treatment did not include the years when Roma was working after his motor vehicle accident.

5

He found that Dr. Prywes's opinion was not consistent with the record as a whole, concluding that "[t]he diagnostic tests, such as repeated MRI's [sic], CT scans, muscle testing, IQ tests, and neurological signs, simply [did] not support disability from all cognitive and exertional activities." App. 24. He further indicated that the supportability of Dr. Prywes's opinion was doubtful as it was based largely upon Roma's subjective responses, which were not themselves entirely credible for the reasons explained in the ALJ's decision. *See id.* at 23-25; *see generally* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). However, the ALJ did credit Dr. Prywes's opinion to the extent the ALJ determined that Roma could not perform his past relevant work as an appraiser. App. 23-24.

Turning to the opinion of Dr. Ligorski, the ALJ specifically stated that the opinion of Dr. Ligorski, as Roma's treating psychiatrist, was "entitled to extra weight." App. 23. Moreover, the ALJ accepted the vast majority of Dr. Ligorski's conclusions, including his determination that Roma had a history of severe depression and anxiety. *Id.* at 26 ("[T]he claimant has a history of depression and anxiety which are 'severe' per Dr. Ligorski's reports.") (internal citation omitted). Thus, while the ALJ did not specifically state that he was according "controlling weight" to Dr. Ligorski's opinion, Roma's assertion that the ALJ "rejected" Dr. Ligorski's opinion is simply inaccurate. *See* Pl.'s Br. at 22. Moreover, to the extent the ALJ discounted Dr. Ligorski's opinion, if at all, his decision to do so was supported by other substantial record evidence. For example, the ALJ's determination that Roma's social limitations did not render him totally disabled was supported by evidence that, in the context of numerous examinations, Roma demonstrated a stable affect, memory for details, and willingness

6

to cooperate with questioning. App. 28, 162-220, 300-301. Similarly, the ALJ's characterization of Roma's concentration impairment as "moderate" was supported by other credible evidence in the record, including evidence that Roma could sit for several hours of neuropsychological evaluation, *id.* at 158-61; evidence that Roma could participate in a lengthy vocational assessment by litigation consultants, *id.* at 162-220; evidence that Roma was able to attend and participate appropriately with numerous medical doctors and evaluators, *id.* at 28, 158-61, 162-220, 221, 253-55, 256-80, 300-301; and evidence that Roma could perform the activities of daily living, *id.* at 26. Accordingly, we conclude that the ALJ correctly applied the treating physician rule when he considered the opinions of Dr. Prywes and Dr. Ligorski.

Roma's second argument -- that the ALJ failed to follow SSR 85-15 by failing to evaluate Roma's ability to cope with stress -- was waived when Roma failed to raise it before the district court below. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) ("Although claimants in Social Security cases are not subject to some issue exhaustion requirements, at least where the claimant is represented by counsel before the district court, the claimant must present the relevant legal arguments in that forum in order to preserve them for appellate review.") (internal citation omitted). Even if Roma had asserted the argument, however, it would be without merit. SSR 85-15, descriptively titled "The Medical-Vocational Rules as a Framework for Evaluating *Solely* Nonexertional Impairments," does not apply to a case, such as this one, in which the claimant suffers from a combination of exertional and non-exertional impairments. *See* Social Security Ruling 85-15, 1985 SSR LEXIS 20 (S.S.A. 1985) (emphasis supplied).

Finally, we turn to Roma's argument that the ALJ improperly used the medical vocational guidelines to determine that there are jobs Roma can perform in the national

7

economy. Because Roma established that his various impairments prevented him from performing his past work, the ALJ had the burden of proving that Roma retained "a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). The ALJ ordinarily meets this burden by utilizing the applicable medical vocational guidelines, although sole reliance on the guidelines may be inappropriate where the claimant's exertional impairments are compounded by nonexertional impairments.

> "In the ordinary case," the Commissioner meets his burden at the fifth step "by resorting to the applicable medical vocational guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)." *Bapp*, 802 F.2d at 604. The grids "take[ ] into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996). Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy. Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations. In particular, "sole reliance on the [g]rid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform." *Id.* In these circumstances, the Commissioner must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Bapp*, 802 F.2d at 603.

*Rosa*, 168 F.3d at 78 (footnote omitted). However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp*, 802 F.2d at 603. Rather, "[a] more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work -- over and above any incapacity caused solely from exertional limitations -- so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Id.* "A claimant's work

8

capacity is 'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Pratts*, 94 F.3d at 39 (quoting *Bapp*, 802 F.2d at 606).

In this case, Roma argues (1) that the non-exertional impairment found by the ALJ required him to obtain vocational testimony, (2) that the ALJ failed to base his conclusions on his own RFC finding, and (3) that the ALJ failed to use or follow SSR 00-4P. Addressing these contentions in turn, Roma's first argument is premised on the assertion that the ALJ's decision was not supported by any vocational evidence. However, two individuals from the state agency, who identified themselves an "adjudicator" and "disability examiner," respectively, provided vocational evidence in this case. *See* App. 110, 127. Roma cites no authority for the proposition that these professionals are not "vocational experts"; to the contrary, the regulations and case law suggest that small variations in job title are not particularly relevant in this context. *See, e.g.*, 1985 SSR LEXIS 20 (S.S.A. 1985) ("[s]tate agencies may use personnel termed vocational consultants or specialists"); *Bapp*, 802 F.2d at 603 ("the Secretary must introduce the testimony of a vocational expert (*or other similar evidence*) that jobs exist in the economy which claimant can obtain and perform") (emphasis supplied)). Thus, we find that the ALJ properly introduced evidence that jobs exist in the economy that Roma can perform, and that Roma's first contention is therefore without merit.[2]

Roma next argues that the ALJ's RFC differed from the adjudicator's RFC, and that the ALJ improperly "acted as his own [vocational expert] and chose the adjudicator's jobs, even

---

[2] Roma's related arguments, that the vocational "adjudicator" and "disability examiner" were required to testify and present their qualifications at the hearing, were waived when Roma failed to present them to the district court. *See Poupore*, 566 F.3d at 306.

though his RFC was different." *See* Pl.'s Br. at 38. This argument is unavailing, however, for the simple reason that a comparison of the RFC employed by the adjudicator and the one employed by the ALJ reveals that the two RFCs are nearly identical -- with the ALJ's RFC determination being more detailed, but not more limiting, than that of the vocational adjudicator. *See* Def.'s Br. at 57.

Finally, Roma failed to assert below the argument that he now urges on appeal: that the ALJ failed to follow SSR 00-4p by not inquiring as to conflicts between the vocational evidence and the information provided in the Dictionary of Occupation Titles ("DOT") about the requirements of a job or occupation. *See* SSR 00-4p. But even if Roma had not waived this argument, the ALJ was not required to make any such inquiry because the jobs he identified were DOT job titles, and therefore there was no "possible conflict between th[e] [vocational] evidence [about the requirements of a job or occupation] and information provided in the DOT." *Id.*

We have considered Roma's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

10