**Michelle GALLIGAN, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

### No. 98–CV–6003L.

United States District Court, W.D. New York.

Sept. 28, 1999.

Peter A. Gorton, Lachman & Gorton, Endicott, NY, for Michelle Galligan, plaintiff.

Brian M. McCarthy, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to disability benefits.

### PROCEDURAL BACKGROUND

Plaintiff Michelle Galligan filed an application for Social Security disability insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits on March 21, 1995. (T. 59–62, 85–86)[1] These applications were denied initially and on reconsideration. (T. 67–69, 89–92, 81–84, 125–128, 93) Following plaintiff's request for a hearing, she appeared before an administrative law judge ("ALJ") on March 7, 1996. (T. 32) The ALJ found that plaintiff had the residual functional capacity to perform sedentary work and that an application of the Medical Vocational Guidelines directed a finding that plaintiff was not disabled. (T. 22–23) This decision became the final decision of the Commissioner on November 13, 1997, when the Appeals Council denied plaintiff's request for review. (T. 4–5)

1. "T.____" refers to the page of the transcript of the administrative record filed by the Commissioner with his answer.

2. The term "syncopal" relates to "syncope," "a fainting or swooning; a sudden fall of

Pursuant to section 405(g) of Act, plaintiff sought review before this Court of the Commissioner's final decision. 42 U.S.C. § 405(g). The Commissioner now moves, and plaintiff cross-moves, for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c).

### FACTUAL BACKGROUND

Plaintiff, now 32 years-old, was employed as a "server/host" at a Perkins restaurant. (T. 269) Plaintiff's last day of work was January 5, 1995. (T. 35) During the day, plaintiff cares for her three young children, who, at the time of the hearing, were five years old, two years old, and two months old. (T. 44) Plaintiff, when she "take[s] breaks in between to sit down for a few minutes," is able to perform housework, like doing dishes, vacuuming, and "basic" chores. Id.

The record indicates that in October of 1990, plaintiff first complained of dizziness and lightheadedness. (T. 131) Plaintiff's "vision went black" and she "fell down." Id. At the hearing, plaintiff described these events as "spells," noting that she sometimes has a physical warning in the form of shaking, sweating, dizziness, and rapid heart beat before she loses consciousness. (T. 39) On other occasions, her "vision just goes black" and she falls down or loses consciousness. Id. Plaintiff testified that she has two to three "spells" a day. Id. One of these "spells" is usually without warning. (T. 39–40)

Plaintiff continued to report these symptoms to her physicians, but did not receive her current diagnosis of autonomic instability until December of 1994. (T. 170–71) Plaintiff underwent a "tilt table test," during which her blood pressure and heart rate were monitored in both an inclined and supine position. While inclined, plaintiff "became symptomatic with her usual pre-syncopal[2] symptoms of shakiness,

blood pressure or failure of the cardiac systole, resulting in cerebral anemia and subsequent loss of consciousness." STEDMAN'S MEDICAL DICTIONARY 1382 (5th ed.1982).

lightheadedness and diaphoresis.[3]" (T. 170)

## DISCUSSION

### A. Standard of Review

Plaintiff seeks SSI and SSDI benefits, claiming that she suffers from autonomic instability, which has rendered her disabled under the Act. A person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled, an ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in "substantial gainful activity." If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is "severe"—i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the "Listing of Impairments" ... contained in subpart P, appendix 1, of the regulations.... If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's "residual functional capaci-

ty" (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citations omitted) (explaining the process for determining eligibility for SSI and SSDI). Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986)).

This Court must determine whether the Commissioner's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The Commissioner's determination will be upheld as long as it is supported by substantial evidence and is not based on legal error. *See Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989) (citations omitted). For the reasons that follow, I find that the ALJ's decision is not supported by substantial evidence.

### B. The ALJ's Decision

The ALJ determined that plaintiff did have a severe impairment. Due to this

---

**3.** "Diaphoresis" refers to perspiration. Sted- man's Medical Dictionary 390 (5th ed.1982).

impairment, plaintiff could not return to her past relevant work as a restaurant "server/host" because of the exertional and nonexertional requirements of her job. (T. 22) The ALJ denied plaintiff benefits, however, because he determined that plaintiff had the residual functional capacity to perform a full range of sedentary work. The ALJ did not take any evidence from a vocational expert but rather relied on the Medical Vocational Guidelines ("the grids"). Using the grids found in Table No. 1 of 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ determined that plaintiff was not disabled. (T. 22)

In his decision, the ALJ found no objective evidence to document plaintiff's syncopal episodes, and no evidence that "work stresses" trigger these episodes. (T. 20–21) The ALJ also found that plaintiff's activities of daily living, including providing full-time care to three small children, performing household chores, grocery shopping, and walking 15 to 20 minutes per day, "are not consistent with an individual with an ongoing, debilitating impairment." (T. 21) Moreover, the ALJ found that plaintiff's testimony concerning her exertional abilities, including testimony that she can stand from 30 minutes to 60 minutes, sit for 90 minutes, walk for 15 to 20 minutes, and lift over 10 pounds, suggests that plaintiff can perform sedentary work. (T. 21)

For several reasons, the Commissioner's determination affirming the ALJ's decision must be reversed and the case remanded for further administrative proceedings. The ALJ and the Commissioner erred because: (1) the ALJ failed to give proper deference to the opinions of plaintiff's treating physicians that she was unable to work; (2) the ALJ inappropriately applied the Medical Vocational Guidelines; and (3) the ALJ failed to properly develop the record.

4. A treating source is a "physician or psychologist who has provided [the claimant] with medical treatment or evaluation and who has

## C. The ALJ's Failure to Defer to Plaintiff's Treating Physicians

■ Two of plaintiff's treating physicians, Drs. Douenias and Knope, opined that plaintiff was unable to work. (T. 274, 275) Neurologist Dr. Caren Douenias stated that plaintiff "was not employable at this time due to the fact that prolonged sitting, standing, or rapid changes in position will provoke her symptoms and lead to possible fainting and loss of consciousness which may further result in self injury." (T. 274) Cardiologist Dr. Russell Knope indicated that he was "reluctant to endorse gainful employment for this person while she is yet symptomatic." (T. 275) The ALJ disregarded these opinions, and found that plaintiff had the residual functional capacity to perform sedentary work.

Pursuant to 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), the ALJ must give controlling weight to a treating source's [4] opinion on the nature and severity of a claimant's impairment if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." When a treating source's opinion is not given controlling weight, in determining the relative weight of the opinion, the ALJ will consider: the "length of the treatment relationship and the frequency of examination"; the "nature and extent of the treatment relationship"; the "relevant evidence to support an opinion, particularly medical signs and laboratory findings"; the consistency of the opinion with the whole record; the specialization of the source; and "other factors ... which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(2)(i) & (ii), 404.1527(d)(3)–(6), 416.927(2)(i) & (ii), 416.927(d)(3)–(6).

■ Cleary, the ultimate decision on whether a claimant is disabled and unable to work is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902.

However, an ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion to or testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (alterations omitted) (citing *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)). However, the ALJ will "consider[ ] the data that physicians provide but draw[ ][his] own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Here, the ALJ found that the treating physicians' opinions "appear[ ] to be primarily based upon subjective evidence," and stated that he would "give[ ] weight to their findings only as it is based upon objective evidence of record." (T. 21) The ALJ stated that he considered the opinions of both physicians and determined that they found plaintiff to be "neurologically and physically normal with good strength and range of motion in all extremities." (T. 21) However, the ALJ ignored medical evidence generated during the tilt table test that documented plaintiff's condition.[5]

While it is true that prior to undergoing the tilt table test in December of 1994, plaintiff's neurologist, Dr. Douenias, could report no neurological reason for plaintiff's autonomic instability, the tilt table test recreated plaintiff's symptoms and documented her physiological reaction. (T. 170) Moreover, Dr. Douenias described plaintiff's reaction when, during an examination on February 15, 1996, Dr. Douenias attempted to measure plaintiff's blood pressure after she rose from a sitting position. Plaintiff "began to feel extremely lightheaded and flushed," and the examiners "had to lay her down." (T. 271)

The ALJ also questioned Dr. Douenias' recommendation that plaintiff stop work in January of 1995 while she was obtaining a second opinion regarding her medical impairment. (T. 20) The ALJ found no evidence of a second opinion, "as recommended by her treating physicians." (T. 20) The record, however, reflects that plaintiff did, in fact, receive the second opinion recommended by Dr. Douenias. On January 5, 1995, Dr. Douenias noted that plaintiff was scheduled to see Dr. Karen C. Johnson, a neurologist in Rochester, New York, the next day. (T. 200) Dr. Douenias further noted that "[a]fter we receive all the records from Strong Memorial, we may get a second opinion from Dr. Knope here in Corning. I also gave her a note to refrain from working while this work up is being continued." *Id.* The record reveals that plaintiff was, in fact, seen by Dr. Johnson on January 6, 1995 and by Dr. Knope on January 18, 1995. (T. 175–76, 220–21) Dr. Knope noted that plaintiff had "received multi [sic] assessments in various disciplines with the most significant clue coming from an abnormal upright tilt table test with the most plausible diagnosis being that of autonomic instability." (T. 221)

In sum, I find that several of the reasons advanced by the ALJ for disregard-

---

5. The ALJ reviewed some of the record medical evidence and listed five factors that, "in combination [were] indicative of a finding that the claimant's subjective complaints, including pain, were not as corroborated in severity, duration and intensity as to support a finding of total disability as the claimant alleges." (T. 20) Based the ALJ's discussion, it is unclear whether the ALJ viewed these factors as discounting plaintiff's description of her symptoms, countering plaintiff's treating physicians' opinions that plaintiff was unable to work, or minimizing plaintiff's nonexertional impairments. In any event, several of these holdings are contrary to evidence in the record.

Moreover, although the ALJ's decision suggests that he did not find plaintiff to be credible, the transcript suggests otherwise. At the hearing, plaintiff offered to present testimony from her mother and her boyfriend to describe their observations of plaintiff's "spells," including the frequency of occurrence. Although the ALJ did not prevent their testimony, he indicated that corroboration of plaintiff's testimony was unnecessary, because he had no "problem with her credibility." (T. 55)

ing the treating physicians' opinions are not supported by the record. Furthermore, as discussed, *infra,* these errors are compounded by the ALJ's failure to consider plaintiff's nonexertional impairments when applying the grids.

## D. Application of the Medical Vocational Guidelines

■■ The applicable Medical Vocational Guidelines may be employed by the Commissioner to satisfy his burden at the fifth step, that is whether plaintiff can engage in substantial gainful employment in the national economy. The grids consider "the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Rosa,* 168 F.3d at 78 (citing *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y. 1996)). "Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations. In particular, 'sole reliance on the [g]rid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform.'" *Id.* (alteration in original).

■ Where a claimant suffers from exertional and nonexertional impairments,[6] the regulations direct that "the rules in appendix 2 [will not be applied] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision." 20 C.F.R. §§ 404.1569a(d), 416.969a(d). "In these circumstances, the Commissioner must 'introduce the testimo-

ny of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" *Rosa,* 168 F.3d at 78 (citing *Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir.1986)).

Examples of nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi), 416.969(a)(c)(1)(vi). In this case, plaintiff's treating physician noted that "prolonged sitting, standing, or rapid changes in position will provoke her symptoms and lead to possible fainting and loss of consciousness which may further result in self injury." (T. 274) This assessment indicates that plaintiff suffers from exertional and nonexertional impairments. Moreover, the ALJ specifically noted that plaintiff was "unable to perform her past relevant work because of the exertional and nonexertional requirements of these jobs." The ALJ's sole reliance on the grids and his failure to consider plaintiff's nonexertional impairments was in contravention of the regulations and Second Circuit precedent. In view of plaintiff's nonexertional impairments, the Commissioner's application of the grids was inappropriate.

## E. The ALJ's Failure to Properly Develop the Record

■■ As discussed above, the ALJ disregarded plaintiff's nonexertional impairments, and found that plaintiff's treating physicians did not indicate that plaintiff was unable to perform sedentary work. Unfortunately, the record is not clear as to whether the treating physicians were ever specifically asked about plaintiff's ability to perform sedentary work.[7] The ALJ has

---

**6.** Exertional limitations are defined as "restrictions ... [that] affect only [the claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. §§ 404.1569a(b), 416.969a(b). Nonexertional limitations include "restrictions ... [that] affect only [the claimant's] ability to meet the demands of jobs other than the strength de-

mands." 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

**7.** At the hearing, the ALJ requested that counsel for plaintiff obtain a residual functional capacity assessment from plaintiff's treating physicians. (T. 55–56) In response, Dr. Knope opined that: "If Ms. Galligan can be relieved of her symptoms, or at least marked-

an "affirmative obligation to develop a claimant's medical history, 'even when the claimant is represented by counsel.'" *Rosa,* 168 F.3d at 79 (quoting *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996)). The significance of this obligation is further illustrated here, where the Commissioner bears the burden of establishing that plaintiff can perform sedentary work. *See Carroll v. Secretary of Health and Human Servs.,* 705 F.2d 638, 643 (2d Cir.1983) (Physicians "were never asked what work or activity, such as sedentary employment, [plaintiff] *could* perform and hence expressed no opinion on that subject.") (emphasis in original).

This failure of the ALJ to fully develop the record on this important issue coupled with the other areas discussed, *supra,* require that the Commissioner's final decision be reversed and the matter remanded for further proceedings.

### CONCLUSION

I find that there is not substantial evidence to support the Commissioner's conclusion that plaintiff is not disabled under the Act. Therefore, the Commissioner's motion for judgment on the pleadings (Dkt.# 5) is hereby denied. Plaintiff's cross-motion (Dkt.# 8) is also denied.[8] This case is hereby remanded to the Commissioner pursuant to 42 U.S.C. § 405(g) for findings consistent with this opinion.

IT IS SO ORDERED.

---

ly attenuated, she would have no imposed physical limitations regarding activity in the work environment, however I would be reluctant to endorse gainful employment for this person while she is yet symptomatic. There may be some additional psychosocial overtones which would influence her employability that have not been addressed." (T. 275) The ALJ suggested that Dr. Knope's response was an attempt to "avoid" such an assessment. (T. 20–21) It is true that Dr. Knope's response is hardly a complete assessment of plaintiff's residual functional capacity. However, the record is silent as to the actual request made of plaintiff's doctors, including whether plaintiff's physicians were ever specifically queried as to whether plaintiff was able to perform sedentary work.

8. The errors and lapses in the record discussed here also preclude the Court from reversing and remanding solely for the payment of benefits. The record needs to be clear and unequivocal for the Court to direct payment of benefits. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987). A further development of the record is necessary. Much depends on the vocational evidence and the treating physicians' opinions concerning the plaintiff's ability to do work other than her past relevant work.