**Robert PARISH, Plaintiff,**

**v.**

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98–CV–6059L.**

United States District Court, W.D. New York.

Sept. 30, 1999.

**280**

William J. McDonald, Jr., Bond and McDonald, Geneva, NY, for Robert Parish, plaintiff.

Anne VanGraafeiland, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

Plaintiff, Robert Parish, brought this action pursuant to section 405(g) of the Social Security Act ("the Act") to review the final decision of the Commissioner of Social Security ("the Commissioner") that plaintiff was not entitled to Social Security benefits. The Commissioner moved and plaintiff cross-moved for judgment on the pleadings under FED.R.CIV.P. 12(c). For the reasons discussed below, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

### PROCEDURAL HISTORY

Plaintiff applied for Social Security disability insurance benefits on October 13, 1994, alleging disability due to degenerative disc disease and ankylosing spondyli-

tis.[1] (T. 51–54).[2] Plaintiff's application was denied initially and on reconsideration. (T. 55–57, 61, 70–72). On December 4, 1995, plaintiff appeared before an administrative law judge ("ALJ"). (T. 27) The ALJ determined that although plaintiff could not perform his past relevant work, plaintiff had the residual functional capacity to perform light work. (T. 20) This decision became the final decision of the Commissioner on January 20, 1998, when the Appeals Council denied plaintiff's request for review. (T. 5–6) Plaintiff now seeks review before this Court pursuant to 42 U.S.C. § 405(g).

### FACTUAL BACKGROUND

Plaintiff, 48 years old at the time of the hearing, worked as a heavy equipment operator for the Seneca County Highway Department from 1987 until June 4, 1994, when he ceased work due to physical problems. (T. 30–31) In addition to operating heavy equipment, plaintiff's work also entailed physical labor such as shoveling blacktop, cutting-up trees, changing heavy snowplow blades, and working as a flag person. (T. 4–5)

Plaintiff testified that he stopped work on the advice of his physician, Dr. Michael Eisman, after experiencing sharp pain in his neck while repairing a tiller at home. (T. 31) At the suggestion of another physician, orthopedist Dr. Olaf Lieberg, plaintiff sought vocational rehabilitation by completing a computer repair course at home. (T. 35–36) Plaintiff testified that he soon found he was physically unable to work in this field due to his physical limitations. (T. 36–37) The computer components themselves are heavy, and the work often involved small parts which he had difficulty manipulating.

---

**1.** Ankylosing spondylitis is "arthritis of the spine, resembling rheumatoid arthritis, that may progress to bony ankylosis with lipping of vertebral margins...." STEDMAN'S MEDICAL DICTIONARY 1321 (5th ed.1982). Ankylosis refers to a "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or

bony union across a joint." STEDMAN'S MEDICAL DICTIONARY 81.

**2.** "T.___" refers to the page of the transcript of the administrative record filed by the Commissioner with his answer.

Plaintiff testified that he experienced "tremendous pain" in his neck and shoulders after bending over for any length of time. *Id.* Plaintiff testified that he is able to bend his neck at an angle for 15 minutes, and that he is able to either stand or sit from 15 to 30 minutes. (T. 42–43) Plaintiff switches positions frequently during the day and tries to avoid lifting altogether. (T. 43–44)

## THE ALJ'S DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since his onset-of-disability date, June 6, 1994, and that plaintiff's impairments were "severe" within the meaning of the Act. (T. 16). The ALJ then determined that plaintiff did not have an impairment or combination of impairments that met or equaled the listed impairments described in appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. (T. 19) The ALJ determined that plaintiff lacked the capacity to return to his former employment, but, the ALJ also determined that plaintiff had the residual functional capacity to perform light work. (T. 20) The ALJ then applied the Medical Vocational Guidelines ("the grids") and found that Rule 202.20 of Table 2 directed a finding that plaintiff was not disabled. (T. 19); 20 C.F.R. Part 404, Subpart P, Appendix 2.

## DISCUSSION

Plaintiff seeks disability benefits, claiming that his degenerative disc disease and ankylosing spondylitis has rendered him totally disabled under the Act. A person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or im-

pairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience; engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled, the ALJ employs a five-step inquiry:

> The first step determines whether the claimant is engaged in "substantial gainful activity." If he is, benefits are denied. If he is not engaged in such activity, the process moves to the second step, which decides whether the claimant's condition or impairment is "severe"—i.e., one that significantly limits his physical or mental ability to do basic work activities. If the impairment is not severe, benefits are denied. If the impairment is severe, the third step determines whether the claimant's impairments meet or equal those set forth in the "Listing of Impairments" ... contained in subpart P, appendix 1, of the regulations.... If the claimant's impairments are not listed, the process moves to the fourth step, which assesses the individual's "residual functional capacity" (RFC); this assessment measures the claimant's capacity to engage in basic work activities. If the claimant's RFC permits him to perform his prior work, benefits are denied. If the claimant is not capable of doing his past work, a decision is made under the fifth and final step whether, in light of his RFC, age, education, and work experience, he has the capacity to perform other work. If he does not, benefits are awarded.

*Bowen v. City of New York,* 476 U.S. 467, 470–71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986) (citations omitted) (explaining the process for determining eligibility for disability benefits). Once a claimant has proven steps one through four, the burden then shifts to the Commissioner to show that the claimant "retains a residual functional capacity to perform alternative sub-

stantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).

 This Court must determine whether the Commissioner's decision that plaintiff was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The Commissioner's determination will be upheld as long as it is supported by substantial evidence and is not based on legal error. *See Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir.1989) (citations omitted). For the reasons that follow, I find that the ALJ's decision is not supported by substantial evidence.

Although plaintiff's treating physician repeatedly opined that plaintiff was *not* disabled, plaintiff contends that the ALJ erred in disregarding portions of the report of his treating physician in determining that plaintiff was able to perform light work. Plaintiff also argues that the ALJ improperly rejected plaintiff's subjective complaints of pain and improperly applied the grids.

 Pursuant to 20 C.F.R. § 404.1527(d)(2), the ALJ must give controlling weight to a treating source's [3] opinion on the nature and severity of a claimant's impairment if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] case record." Although on August 1, 1994 and September 22, 1994, Dr. Lieberg did author brief notes excusing plaintiff from work, none of plaintiff's physicians concluded that plaintiff's impairments rendered him unable to perform all types of work.[4] Moreover, Dr. Lieberg frequently indicated the contrary: that plaintiff was able to perform light or sedentary work. Despite Dr. Lieberg's ultimate opinion, plaintiff contends that the ALJ improperly disregarded limitations noted by Dr. Lieberg, and thus erroneously determined that plaintiff could perform light work.

In a report to the New York State Department of Social Services, Dr. Lieberg indicated that when he first saw plaintiff on June 17, 1994, plaintiff was not working because he had been "given an excuse for work." Dr. Lieberg determined that plaintiff's shoulder had a "subtle bulge at the C6–7 level" and that plaintiff suffered from "degenerative arthritis at C3–4 and C6–7." (T. 125) At the time, plaintiff was taking Indocin and Ibuprofen for pain. *Id.* Plaintiff underwent physical therapy, and returned to Dr. Lieberg on September 22, 1994. Dr. Leiberg noted that plaintiff "was unable to go back to work because his employer won't let him go back to work with light duty." (T. 126)

Following an examination on October 6, 1994, Dr. Leiberg noted that plaintiff had a limited range of motion in his neck, and that his chest expansion was only one inch. (T. 126) Dr. Leiberg indicated that plaintiff suffered from "[b]ack pain secondary to ankylosing spondylitis," and summarized his opinion on plaintiff's ability to work as follows:

> I felt that he should not return to driving heavy equipment, but I felt that he could be rehabilitated and suggested

---

**3.** A treating source is a "physician or psychologist who has provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502.

**4.** The record contains two form notes dated August 1, 1994 and September 22, 1994 from Dr. Lieberg, which read "Robert Parish has been under my care and may not work until further notice." (T. 162–63)

that he seek OVR rehabilitation. I feel that the patient has moderate overall disability. I feel he can do light sedentary work.

(T. 126) This opinion was echoed in letters sent by Dr. Lieberg to Dr. Eisman. (T. 127, 128)

Plaintiff argues that in determining that plaintiff was able to perform light work, the ALJ erred in assuming that the doctor's recommendation of "light sedentary work" necessitated a finding that plaintiff could perform "light work" as defined by the Commissioner.

Using a form apparently prepared by plaintiff's attorney, Dr. Lieberg conducted an assessment of plaintiff's abilities on May 23, 1995. Dr. Lieberg noted that plaintiff could crouch, kneel, or bend for one hour a day and climb, balance, stoop, climb stairs, reach, ·push, or pull occasionally (two or three hours a day). (T. 149) He indicated that plaintiff could continuously stand for two hours, walk for one or two hours, and sit for one hour. During one eight-hour day, plaintiff could stand for four hours, walk for three or four hours, and sit for three hours. (T. 150) Plaintiff could also lift and carry 11–20 pounds for three to six hours per day. *Id.* Dr. Lieberg concluded the form by indicating that plaintiff was not totally disabled. *Id.* A state medical consultant who reviewed plaintiff's records for the Department of Disability Services determined that plaintiff could sit, stand, or walk for six hours in an eight-hour work day. (T. 63)

The applicable regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work[5], unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Plaintiff cites Social Security Rule 83–10, in which the Commissioner suggests that light work involves standing or walking for approximately six hours in an eight-hour work day and sedentary work involves the ability to stand for six out of eight hours. 1983 WL 31251, *5–6. Plaintiff essentially argues that despite Dr. Lieberg's repeated suggestions that plaintiff could perform light work, because Dr. Lieberg indicated that plaintiff could only sit for three hours and stand for four hours, this Court must find that plaintiff does not have the residual functional capacity to perform light work.

Based on the medical evidence supporting Dr. Lieberg's opinion that plaintiff was not disabled, the residual functional capacity assessment of the consulting physical and the precatory nature of the Social Security rules cited by plaintiff, I am not persuaded by plaintiff's argument.

■ After assessing all of plaintiff's limitations, Dr. Lieberg stated on several occasions that plaintiff was not disabled, or that plaintiff was able to perform "light sedentary work." I recognize that just as a treating physician's assertion that a claimant is disabled does not *per se* estab-

---

**5.** "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

lish eligibility for disability benefits, a physician's assertion that a claimant is *not* disabled is also not conclusive on the issue of disability. Nevertheless, in this case, Dr. Lieberg's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2).

Moreover, as noted above, a consulting physician determined that plaintiff could sit, stand, or walk for six hours in an eight-hour work day. (T. 63) This opinion comports with the medical evidence on the record and, when coupled with Dr. Lieberg's observations of plaintiff's medical condition, supports the ALJ's decision that plaintiff can perform light work. *See Diaz v. Shalala*, 59 F.3d 307, 313, n. 5 (2d Cir.1995) (The treating source rule as articulated in the regulations may "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record.").

Finally, Social Security Rule 83–10 only suggests the six-hour requirements. This language is "merely precatory" and, thus, is not binding on the ALJ. *Ferraris v. Heckler*, 728 F.2d 582, 587, n. 3 (2d Cir. 1984). This is not to suggest that all Social Security claimants may be able to perform light work irrespective of the six-hour requirements. For example, in *White v. Secretary of Health and Human Services*, 910 F.2d 64, 65–66 (2d Cir.1990), the Court of Appeals found that plaintiff's treating physician's report indicating that plaintiff could sit for two or three hours without interruption and for only four hours in an eight-hour day did not support ALJ's finding that plaintiff could perform light work. However, in *White*, the ALJ "failed to set forth the medical evidence or basis" for this determination. *Id.* at 65. Here, the ALJ relied on the opinion of plaintiff's treating physician, which unequivocally indicated that plaintiff was not disabled. (T. 18, 150)

Based on the medical evidence and the opinions of plaintiff's treating physicians, there was substantial evidence to support the ALJ's decision that plaintiff met the applicable regulation defining light work. If plaintiff's own physicians declined to find him totally disabled, it is difficult to fault the ALJ for coming to the same conclusion.

■ Plaintiff also argues that the ALJ improperly rejected plaintiff's subjective complaints of pain. As noted above, the ALJ determined that plaintiff's "allegations of disability were not credible in view of [his] activities of daily living and the medical evidence of record." The ALJ noted that plaintiff was able to do light cleaning, wash dishes, do yard work, socialize with friends, drive a car for short distances, and use public transportation. More importantly, the ALJ found that "[t]he medical evidence of record shows a chronic condition that should not preclude the claimant from any gainful employment which would encompass his physical limitations." Plaintiff indicated that he suffered from constant pain, and that this pain interfered with his ability to work in the field for which he was retrained. (T. 37–38) Although there was a medical basis for plaintiff's complaints, as noted above, plaintiff's treating physician consistently indicated that plaintiff's medical condition was not disabling. In light of all the evidence, an ALJ may "evaluate the credibility of an individual's allegations of pain." *Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir.1983). Although there is no question that plaintiff's condition caused him pain and discomfort, the ALJ's decision to evaluate plaintiff's complaints in the context of the treating physician's opinion is supported by substantial evidence.

■ Finally, plaintiff asserts that the ALJ improperly applied the Medical Vocational Guidelines and determined that plaintiff was not disabled. Plaintiff argues that because his impairments impact his ability to perform the full range of light

work, application of the grids was improper. The Commissioner now concedes that the ALJ erred in utilizing the grids as he did "because plaintiff's capacity for light work was reduced by his inability to frequently kneel, crouch, or bend." The Commissioner argues, however, without any citation of authority, that the ALJ permissibly used the grids as a "framework for decision making."

■ The grids may be used by the Commissioner to satisfy his burden at the fifth step, that is whether plaintiff can engage in substantial gainful employment in the national economy. The grids consider "the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience." *Rosa,* 168 F.3d at 78 (citing *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y. 1996)). "Although the grid results are generally dispositive, exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations." *Id.* Where a claimant suffers from exertional and nonexertional impairments, the regulations direct that "the rules in appendix 2 [will not be applied] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rules provide a framework to guide our decision." 20 C.F.R. § 404.1569a(d). Examples of nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi).

If plaintiff suffered from only exertional impairments, application of the grids would clearly be appropriate. *See Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir.1996). However, where a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account [a] claimant's nonexertional impairments."

*Id.* (internal quotations omitted) (quoting *Bapp,* 802 F.2d at 605–06). As the Commissioner conceded, plaintiff's nonexertional limitations effected his capacity for light work. Given these limitations, the ALJ should have introduced testimony from a vocational expert or received other evidence to ascertain whether jobs existed in the national economy that plaintiff could perform. *See id; Rosa,* 168 F.3d at 78. The ALJ's failure to do so requires a remand.

## CONCLUSION

Therefore, the Commissioner's motion for judgment on the pleadings (Dkt.# 3) and plaintiff's cross-motion (Dkt.# 6) are denied.

The case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g) for further proceedings, consistent with this decision and order, concerning plaintiff's residual functional capacity to perform other work in the national economy.

IT IS SO ORDERED.