Naomi GALLIVAN, Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. 99–CV–6058L.

United States District Court,
W.D. New York.

March 28, 2000.

William J. McDonald, Jr., Bond and Mc-Donald, Geneva, NY, for Naomi Gallivan, plaintiff.

Anne VanGraafeiland, AUSA, United States Attorney, Rochester, NY, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff was not disabled under the Social Security Act, and therefore, was not entitled to disability benefits. Both plaintiff and the Commissioner have moved for judgment on the pleadings pursuant to FED.R.CIV.P. 12(c). For the reasons outlined below, the Court finds that the Commissioner's decision was not supported by substantial evidence and accordingly remands the matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff Naomi Gallivan ("Gallivan") applied for Social Security disability benefits on August 9, 1995. (T. 64–67).[1] The Social Security Administration denied her application initially and upon reconsideration. (T. 68–70, 103–105). Plaintiff requested a hearing before an administrative law judge ("ALJ"), and a hearing was held in the case on March 20, 1997. (T. 41–63). On April 16, 1997, the ALJ decided that she was not entitled to disability benefits. (T. 27–28). The ALJ's decision became the final decision of the Commissioner on January 22, 1998 when the Appeals Council denied plaintiff's request for review. (T. 5–6). Plaintiff commenced this action on February 5, 1999, seeking review by this Court of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Gallivan was born on November 19, 1945. (T. 64). Claiming that she has been unable to work since November 11, 1994 due to her asthma and other ailments, plaintiff seeks disability benefits. (T. 64–70). Gallivan has a tenth grade education. (T. 50, 120). She formerly worked as a laborer in a canning factory and as a home health care aide. (T. 45, 58, 131).

The medical records contained in the file show a long history of complaints by plaintiff of chest pain, shortness of breath, and other breathing difficulties. She has sought treatment on a variety of occasions. Her treating physician, Dr. Malcolm Riggs, has diagnosed her as suffering from restrictive airway disease, gastro-esophogeal reflux, diabetes, and hypertension. (T. 170). Plaintiff's diabetes and hypertension appear to be controlled with medication, and those afflictions are not the basis for her present claims.

In 1996, plaintiff was referred for a psychological examination. Plaintiff was mea-sured with a verbal IQ of 73, a performance IQ of 79, and a full-scale IQ of 75. The attending psychologist diagnosed plaintiff with borderline intellectual functioning, dysthymic disorder, and mixed developmental disorder. (T. 175–176).

In August 1995, Dr. Riggs indicated that although Gallivan had no limitations in standing, walking or sitting, she could only lift and carry less than twenty pounds occasionally, and could only push or pull less than twenty pounds.[2] (T. 173–174). In December 1995, however, Dr. Riggs modified his prior report and found that Gallivan should not perform walking, climbing, standing, lifting, carrying, pushing or pulling while at work, and that she was limited in her ability to sit, stoop, and bend. (T. 180).

In spite of Dr. Riggs' assessment, the ALJ ruled that plaintiff was not disabled, and he denied benefits. Although the ALJ ruled that she could not still perform her past work as a laborer in a canning factory or as a home health care aide, he found that plaintiff had the residual functional capacity to perform light work, based on his application of the medical-vocational guidelines ("the grids"). (T. 27–28).

## DISCUSSION

A. *The Standard of Review*

The first issue to be determined by this Court is whether the Commissioner applied the correct legal standard. *Tejada v. Apfel,* 167 F.3d 770, 773 (2d. Cir.1999); *see also Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987) (holding that the court must first review the ALJ's decision for correct legal principles before applying the substantial evidence standard to uphold a finding of no disability); *see also Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984)

---

1. "T. __" refers to the page of the transcript of the Record filed by the Commissioner with his Answer.

2. Although it appears that Dr. Riggs wrote "< 20 lbs" (*"less than* twenty pounds"), the ALJ interpreted this to mean *"around* 20 pounds." (T. 23). This is significant because "light work involves lifting no more than 20 pounds." *See* footnote 3, *infra.*

("[f]ailure to apply the correct legal standards is grounds for reversal").

The only other issue to be determined by the Court is whether the Commissioner's conclusions are supported by substantial evidence. *See Townley,* 748 F.2d at 112 ("It is not the function of a reviewing court to determine *de novo* whether a claimant is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding"). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

B. *The Standard for Determining Disability*

A person is "disabled" under the Act and therefore entitled to benefits, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify for benefits, the disability must be the result of an anatomical, physiological or psychological abnormality demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). Such a disability will be found to exist only if an individual's impairment is "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Plaintiff bears the initial burden of showing that her impairment prevents her from returning to her previous type of employment. *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the [plaintiff] could perform." *Id.; see also, Dumas v. Schweiker,* 712 F.2d 1545, 1551 (2d Cir.1983); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980).

The Second Circuit has described the five-step process through which the Commissioner makes a determination as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Tejada v. Apfel,* 167 F.3d at 774.

Here, the ALJ found that plaintiff was not engaged in substantial gainful activity (T. 27), and that her asthma and gastroesophageal reflux condition constituted severe impairments, but that her borderline intellectual functioning, dysthymic disorder, mixed developmental disorder, hyper-

tension, and diabetes did not. (T. 21, 27). The ALJ next determined that Gallivan's impairments "do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." (T. 27). The ALJ also found that while Gallivan was unable to perform her past relevant work as a canning factory worker or a home health care aide, she had the residual functional capacity to perform light work.[3] The ALJ also determined that although plaintiff had nonexertional limitations, her capacity for the full range of light work was "not ... significantly compromised by her nonexertional limitations." (T. 28). While I conclude that the ALJ adhered to the appropriate analytical framework, I do not find that he applied the correct legal principles. Even if the ALJ had applied those principles correctly, I do not find that substantial evidence supported the Commissioner's determination that plaintiff, despite her impairments, had the residual functional capacity to perform light work. Therefore, the ALJ's decision must be reversed and remanded.

## C. *The Parties' Arguments and the Court's Findings*

The Commissioner's motion, under FED. R.CIV.P. 12(c) for judgment on the pleadings, is based primarily on the argument that because plaintiff's alleged impairments did not prevent her from engaging in substantial, gainful activity, the decision that plaintiff is not disabled is supported by substantial evidence and should be affirmed under 42 U.S.C. § 405(g).

In plaintiff's motion, also under FED. R.CIV.P. 12(c), plaintiff argues that the ALJ's determination that plaintiff is not disabled is not supported by substantial evidence. Plaintiff further contends, *inter alia,* that: (1) the opinion of plaintiff's

treating physician regarding plaintiff's residual functional capacity is entitled to conclusive weight; (2) the ALJ incorrectly determined that plaintiff's mental impairments were not severe; (3) the Commissioner failed to prove the existence of alternative, substantial, gainful work which exists in the national economy and which plaintiff could perform; (4) the ALJ failed to apply the grids appropriately; (5) the ALJ was required to retain a vocational expert; and (6) the ALJ failed to develop the record adequately.

### i. *The Reports of Plaintiff's Treating Physician*

Gallivan argues that the ALJ improperly rejected the December 1995 conclusion of her treating physician, Dr. Riggs, that Gallivan should not perform walking, climbing, standing, lifting, carrying, pushing or pulling while at work. (T. 180). It has long been recognized that a treating source's opinion of disability is entitled to some extra weight in claims for Social Security disability benefits. The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence. *Rosa v. Callahan,* 168 F.3d 72, 78 (2d Cir.1999); *see also Clark v. Commissioner,* 143 F.3d 115, 118 (2d Cir.1998), citing 20 C.F.R. § 404.1527(d)(2)[4]. In analyzing a treating physician's report, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," nor can he "set his own expertise against that of a physician who submitted an opinion to or testified before him." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (citing *McBrayer v. Secretary of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir.

---

**3.** With respect to "light work," the Commissioner's regulations provide, in part: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

**4.** The regulations state: "If we find that a treating source's opinion on the issue(s) of the

nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

1983)) (internal quotation marks omitted); *see also Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 862 (2d Cir.1990) ("a circumstantial critique by [a] non-physician[ ], however thorough or responsible, must be overwhelmingly compelling" to justify a denial of benefits).

In cases in which the Commissioner does not give the treating source's opinion controlling weight, the ALJ must give "good reasons" in his decision for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(d)(2). The regulations further require the ALJ to accord the physician's statements some extra weight based upon several factors, including the length of the treatment relationship, the nature and extent of the relationship, the supportability of the source's opinion, the consistency with other medical evidence in the record, whether the opinion involves the speciality of the physician, and any other factors that might be relevant. 20 C.F.R. § 404.1527(d)(2). In this case, the ALJ failed to address any of these factors, however.

Indeed, it is unclear what standard the ALJ used to weigh Dr. Riggs' August and December 1995 opinions. It is abundantly clear though that the ALJ discounted Dr. Riggs' December 1995 report of plaintiff's work restrictions. (T. 25). This report, however, supports the fact that plaintiff may not walk, climb, stand, lift, carry, push or pull, and is limited in stooping, bending, and sitting while at work. (T. 180). The ALJ stated that he accorded this report less weight because no objective diagnostic testing or findings were provided in Dr. Riggs' later report indicating that plaintiff's condition had significantly deteriorated, and because Dr. Riggs did not quantify the extent of the restrictions he imposed. (T. 25). This is not sufficient or explicit enough, however, to justify rejecting that report. *See Dwyer v. Apfel*, 23 F.Supp.2d 223, 228 (N.D.N.Y. 1998).

In *Schaal v. Apfel*, 134 F.3d 496 (2d Cir.1998), the Second Circuit held that the lack of specific clinical findings in the treating physician's report did not, standing by itself, justify the ALJ's failure to credit the physician's opinion. Indeed, "even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte.*" *Id.*, at 505; *see also Rosa v. Callahan*, 168 F.3d at 79–80; *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) ("[i]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding") (citations and internal quotation marks omitted); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel …") (citations omitted); *Hartnett v. Apfel*, 21 F.Supp.2d 217, 221 (E.D.N.Y. 1998) ("if an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly").

If the ALJ had any lingering concern that Dr. Riggs had not shown that plaintiff's condition had deteriorated between August and December 1995, or that Dr. Riggs had failed to "quantify" the restrictions imposed, the onus was on the ALJ to take the necessary steps to obtain clarifying information concerning the perceived inconsistencies between Dr. Riggs' two reports or to obtain other additional information. As the Second Circuit has observed:

If asked, [the doctor] might have been able to provide a medical explanation for why [the applicant's] condition deteriorated over time. Likewise, the doctor might have been able to offer clinical findings in support of his conclusion that [the applicant] could not [sit for most of] the workday. [The doctor's] failure to include this type of support for the findings in his report does not mean that such support does not exist; he might

not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case. There is, to say the least, a serious question as to whether the ALJ's duty to develop the administrative record was satisfied in this case.

*Clark v. Comm'r,* 143 F.3d at 118.

### ii. The Determination That Plaintiff's Mental Impairment Was Not Severe

 The ALJ essentially ignored the psychologist's findings that Gallivan suffered from borderline intellectual functioning, dysthymic disorder, and mixed developmental disorder. This was error. Although he summarized the psychologist's report in his decision, the ALJ did not test the report's conclusions by presenting them to a vocational expert. The ALJ concluded, nevertheless, that "[as] these diagnoses were made on the basis of a single visit, and are not alleged to be problems by the claimant, they are not being considered severe impairments." (T. 21). There is no substantial evidence in the record to support the ALJ's findings that these problems were not severe. (*See also* T. 86). First, plaintiff did claim that her learning disability was a "problem." Indeed, over a year before the ALJ issued his decision, the Social Security Administration not only acknowledged plaintiff's claim concerning her learning problems, but also conceded that the medical evidence established that she had a learning disability. (T. 105). Additionally, in *DeLeon v. Secretary of Health & Human Servs.,* 734 F.2d 930 (2d Cir. 1984), the Second Circuit rejected a similar decision of an ALJ, noting that "[s]urely a borderline IQ has a bearing on employability, even as a mop-pusher, porter, or maintenance man." *Id.* at 935–936. Because I find nothing in the record that substantially contradicts the psychologist's diagnoses, the ALJ's finding of non-severity is not supported by substantial evidence in the present record.

### iii. Application of the Grids

 Generally, if a claimant suffers only from exertional impairments, *e.g.,* strength limitations [5], then the Commissioner may resort to the applicable grids to satisfy his burden of establishing that plaintiff can engage in substantial, gainful employment in the national economy. *Rosa v. Callahan,* 168 F.3d at 82. For a claimant whose characteristics match the criteria of a particular grid, the rule directs a conclusion as to whether she is disabled. *Id.* However, where significant nonexertional impairments [6] are present at the fifth step in the disability analysis, "application of the grids is inappropriate." *Id.,* (quoting *Bapp v. Bowen,* 802 F.2d 601, 605–06 (2d Cir.1986)). In fact, where a claimant suffers from exertional and nonexertional impairments, the regulations direct that "the rules in appendix 2 [will not be applied] unless there is a rule that directs a conclusion that [the claimant is] disabled based upon [h]er strength limitations; otherwise the rules provide a framework to guide [the Commissioner's] decision." 20 C.F.R. § 404.1569a(d). "In these circumstances, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Rosa v. Callahan,* 168 F.3d at 82 (quoting *Bapp v. Bowen,* 802 F.2d at 603) (internal quotation marks omitted).

---

**5.** Exertional limitations are defined as "restrictions ... [that] affect only [the claimant's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

**6.** Nonexertional limitations include "restrictions ... [that] affect only [the claimant's] ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c). Examples of nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi); *Galligan v. Apfel,* 69 F.Supp.2d 428, 434 (W.D.N.Y.1999).

In the present case, despite the ample evidence of plaintiff's environmental limitations as well as the evidence of plaintiff's borderline intellectual functioning, the ALJ concluded that plaintiff's nonexertional limitations did not significantly affect her employment opportunities. He then concluded that plaintiff was not disabled "within the framework" of the grids.[7] If plaintiff suffered from only exertional impairments, application of the grids would clearly have been appropriate. *See Pratts v. Chater*, 94 F.3d at 39. However, where, as here, a claimant's nonexertional impairments "significantly limit the range of work permitted by her exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Id.* (quoting *Bapp v. Bowen*, 802 F.2d at 605–06) (internal quotation marks omitted). As the ALJ conceded, plaintiff's nonexertional limitations "interfere with her ability to work." (T. 22). In sum, the record does not support the ALJ's opinion that such limitations would not significantly compromise her ability to perform a full range of light or sedentary work. Given these limitations, the ALJ should have introduced testimony from a vocational expert or received other evidence to ascertain whether jobs existed in the national economy that plaintiff could perform. *See Rosa v. Callahan*, 168 F.3d at 82; *Pratts v. Chater*, 94 F.3d at 39. The ALJ's failure to do so requires a remand. *Parish v. Apfel*, 70 F.Supp.2d 279, 285 (W.D.N.Y. 1999); *Melchior v. Apfel*, 15 F.Supp.2d 215, 222–223 (N.D.N.Y.1998).

iv. *Credibility Determinations*

The function of the ALJ includes evaluating the credibility of all witnesses, including the claimant. *See Carroll v. Secretary of HHS*, 705 F.2d 638, 642–643 (2d Cir.1983). Although the ALJ is free to accept or reject the testimony of any witness, a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir.1988) (citation omitted). The ALJ's findings must be consistent with the other evidence in the case. *See id.* at 261.

Here, the ALJ found that Gallivan's statements concerning her impairments and their impact on her ability to work were not entirely credible. In cases where pain or other subjective symptoms are alleged, the determination must contain a thorough discussion and analysis of the objective medical evidence and the other evidence, including the complaints of pain as well as the ALJ's personal observations. However, the ALJ "is not free to accept or reject [an] individual's complaints solely on the basis of [the ALJ's] personal observations. . . ." Social Security Ruling ("SSR") 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996). In addition, SSR 96–7p provides:

[The ALJ] must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the

---

7. In determining that plaintiff was not disabled, the ALJ twice cited Rule 201.10, 20 C.F.R. § 404, Subpt. P, App. 2, (T. 26, 28), which provides that a claimant aged 50–54, with limited education, whose previous work experience was unskilled or none, and whose residual functional capacity limits her to sedentary work, is *disabled*. Although defendant explains this as merely a typographical error, this is further evidence that remand is necessary.

evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96–7P.

■ A review of the ALJ's decision in this case indicates that he discounted Gallivan's subjective complaints because he found them to be not entirely credible, primarily because there was evidence that plaintiff failed to take her medication as prescribed, and because she "must have certified that she was willing and able to work" in her application for unemployment benefits. (T. 25, 27). Although the ALJ's decision contains a discussion of the medical evidence and a summary of Gallivan's subjective complaints, the decision does not sufficiently link his credibility finding to the evidence in the record, and fails to identify the weight, if any, afforded the affidavits of plaintiff's daughter and daughter-in-law concerning plaintiff's pain. *See* 20 C.F.R. § 404.1529. The ALJ did not state if he placed any weight on the affidavits of plaintiff's daughter, Karen Jenkins, or plaintiff's daughter-in-law, Stacy Gallivan, regarding plaintiff's impairments, pain, and their impact on plaintiff.

While there is evidence that plaintiff at times did not take her medication, the record does not clearly reveal the exact impact that this had on her asthma attacks. The ALJ's opinion that plaintiff's asthma may have been aggravated by her failure to take her medication was based on his own interpretation of plaintiff's medical records. Moreover, despite his affirmative duty to compile a complete record, *see Pratts v. Chater,* 94 F.3d at 37, the ALJ does not appear to have asked any medical expert about the extent to which plaintiff's failure to take her medication as prescribed had caused her attacks. *See Brown v. Apfel,* 174 F.3d 59, 63 (2d Cir. 1999).

v. *Disposition*

■ The court has authority to reverse with or without remand. 42 U.S.C. § 405(g). Remand is appropriate where, as here, there are gaps in the record or further development of the evidence is needed. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980); *Marcus v. Califano,* 615 F.2d 23 (2d Cir.1979) (remanded for reconsideration under standard that subjective evidence of disabling pain, if credited, may support a finding of disability); *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir.1975); *Martone v. Apfel,* 70 F.Supp.2d 145, 148 (N.D.N.Y.1999).

### CONCLUSION

For the foregoing reasons, the Commissioner's decision that plaintiff was not disabled is not supported by substantial evidence and is therefore reversed. Defendant's motion for judgment on the pleadings (Dkt.# 3) is denied, and plaintiff's cross-motion for judgment on the pleadings (Dkt.# 5) is also denied. The case is remanded, pursuant to 42 U.S.C. § 405(g), for further administrative proceedings, consistent with this Decision and Order.

IT IS SO ORDERED.